Thank you and good morning. We appreciate Council being here today by whatever means necessary, audio and video, and we're ready to hear arguments in the case of Ballantyne v. City of Charlotte. Mr. Terpening, whenever you're ready. Mr. Terpening Thank you, Your Honors. Will Terpening for Ballantyne Village Parking. At the onset of our argument, we would like to focus on what the case is really about in federal court. From our perspective, in a lot of the city's briefings on both the central briefing and some of the other issues that have had us brief, a number of ancillary issues have been injected that would really be for the district court to deal with on remand. And so at the onset, we would like to, again, focus the court on the notion that this is about the simple issue of whether Judge Mullin should have abstained on burqa grounds. And in that context, and in our case with the federal district court, we are not and we're not taking any issue whatsoever with the city's ordinance itself or in the federal court with the application of that ordinance. Our issue, rather, in the federal court has been simply that the city violated Ballantyne Village Parking's due process and by not even allowing BVP to participate in the permitting process like it allowed a non-party called AFP or AFP. All right, this is Judge Thacker. I have a question. Yes, Your Honor. Could you explain then to the court how those claims that you've just articulated can go forward here in district court if we determine that the whole issue of the permit in the first instance is not right before this court right now? Your Honor, our position is that the permit issue is right. Our entire argument is that the permitting process, which I'd like to walk the court through, is really the substance of the process that BVP would have received with the city. Okay, can I follow up? Before you do that, I'd just like to follow up on the process. As I understand it, there's a sort of a two-step dispute resolution process here per the easement. First, the ombudsman who ruled against you, and I understand that is not binding, but then the second step is arbitration. Where does that stand, the arbitration? There's a two-part answer to that, Judge. The arbitration has finished now. There is a final award in that arbitration, and there will be a confirmation proceeding in state court on the arbitration when the courts open in North Carolina again. The arbitration award itself was inconclusive and did not answer any of the questions that the city would have needed answered in order to properly issue the permit. But as we indicated in our... Just before you go on, you said it was inconclusive. The arbitration did not result in issuing the permit one way or the other? It's important, Your Honor, to distinguish there's a permitting process with the city, and then there's an arbitration process, which is a separate and to some degree unrelated process that occurs between BVP and this non-party called ASDRF. And so our issue has nothing to do with the arbitration, which is a matter between private parties. Our issue has to do with the completely separate and separate issue of whether the city should have issued a permit to this ASDRF party to convert office space on its property in a way that would increase its demand for parking spaces on BVP's parking desk. And the court doesn't need for there to be a result in the arbitration to rule that BVP should have been allowed to participate in the city's permitting process that we alleged in the federal district court that BVP was corruptly excluded from to its detriment in that it lost $1.5 million worth of parking spaces because of the city's decision. And to the Yes, Your Honor. This is Judge Rushing. I was going to ask a different question, but then you just said that you lost parking spaces. So I'll have two questions. The first is, doesn't the arbitrator's award decide whether those were your parking spaces, whether this third party was entitled to them? Doesn't that award settle that question of who's entitled to the spaces? It did not, Your Honor. The arbitrator's award, for your reference, is attached as Exhibit C to our supplemental briefing that we filed at the court's direction last week. And what the arbitrator's award does is essentially take the issue back to the city. It simply says, and this is kind of a quote from the award, that ASDRF must use all methods of parking spaces on its property. And if spaces are still necessary to comply with the zoning code, that ASDRF, the party trying to take BVP spaces, then has to use methods, including a shared parking plan, that the city accepts. And so... And then I guess my follow-up question to that, counsel, is your client doesn't own those parking spaces anymore, right? So would... Is your position here that you only have the procedural claims left, the claims about being excluded from the zoning process, the permitting process, and you understand that your prospective relief requests would be moot because your client no longer owns that property? No, Your Honor. This came up in the motion to dismiss briefing about a year ago. The rights to litigate this issue were assigned to BVP at the time of the closing when it sold its parking deck. Because the parties to that transaction acknowledged that BVP was receiving $1.5 million less in the deal because of the city's position that ASDRF was entitled to the parking spaces and the deck. And so BVP has retained all rights to litigate this, and none of our issues are moot. In addition to the process issue, BVP, of course, has actual damages of $1.5 million due to the sale lot. So could I follow up on that, please? This is Judge Quattlebaum, Mr. Terpening. You've mentioned the $1.5 million number issue, and is that what you contend your damages are from the procedural violations? Yes, Your Honor. Okay. And how, if the city's permit is conditioned on the, I guess it's ASVRF's rights to those, to enough parking spots, and the city isn't making the determination over whether or not you're entitled to those spaces or ASVRF is, my question is, how were your losses traceable to the city? Because it seems to me those losses are traceable to the outcome of the litigation you have with ASVRF, and the city's permitting decision, yeah, I realize you wanted it to wait until it was resolved, but even though it went forward, it appears to be conditional, and I didn't see the city ever determining whether, you know, you have the rights to those spaces or the other party to the arbitration. So how is those losses, which I understand those losses, how are those traceable to the city if it isn't making that decision, but that decision is the result of an arbitration treaty proceeding between you and a private party? There's a two-part answer to that, Judge. The first part of that answer is that by issuing the permit, the city is telling the world that, in its view, ASVRF is entitled to those spaces, and that's how parties have interpreted the permit, including the purchasers and all prospective purchases of the deck. And, you know, one of the issues in this case is that if Judge Mullen had allowed the record to be better developed, or if he would on remand, once we get past the jurisdiction issue, we can put evidence into the record supporting that parties have relied on the city's representation that ASVRF is entitled to the spaces in the form of issuing the permit. And the second part of that answer, Your Honor, is that because BBP was excluded from the permitting process, which was this 11-month back-and-forth between ASVRF and the city that BBP asked to participate in, but was excluded from, BBP gets to present the city with a lot of information that the city would have used to not issue the permit. For example, as we explain in the complaint and as alluded to in the briefing, the city ignored the fact in issuing the permit that there was a 2005 revised site plan for the development that prohibited the permit from being issued. Yes, sir, let me interrupt you, and I apologize. It's hard doing this by phone, and I'm sorry, but I've read about that, and I appreciate your argument that there were things that you believe the permit violated within the city's processes and the city site plan. So I think I understand that issue. You know, two follow-ups aside from the traceability issue that I mentioned. If you prevail on the litigation that stems from the arbitration, I mean, will you still have the $1.5 million of losses? I don't know that we can prevail on the litigation that stems from the arbitration at this point because the arbitration award is so poorly drafted and unclear. I don't know that the arbitration award gets any party in this case anywhere because all the arbitration award does is send the matter back to the city. And so the answer to that is I don't see as a practical matter how anybody can prevail on any litigation. You know, that award is almost certainly going to be confirmed by a North Carolina state court judge in June or July. As Your Honor doubtless knows, once that award is confirmed, DPP has almost no ability to contest anything within that award. And so as a practical matter, under the standards for appealing a motion to confirm, there is absolutely nothing that DPP can do with that award except point to the fact that the award doesn't really say anything that helps ASPRF either. And so that... Okay. I'm sorry. Let me then follow up with that because I think I understand where you're going with that. If the perceived uncertainty about that award means that the city has to make some determination, you know, then I wonder whether, you know, your right to relief against the city would maybe exist if it then makes some determination about the rights to the parking spaces in response to that, you know, as you characterize it, ambiguous arbitration award. But I'm still having trouble right now understanding where the city has made any determination yet about the parking spaces other than, of course, issuing the permit conditional in a conditional format. Our answer to that, Judge, is that that's the determination. You know, if the permit can only be issued if ASPRF has the spaces, that implies the determination that ASPRF has the spaces. And that's the way that every third party dealing with DPP in terms of looking at buying the deck and the transaction to buy the deck has interpreted it. And I'll suggest, Your Honor, that the solution to that, you know, the way that the city could eliminate to a large extent DPP's damages claim and the court could remedy this situation is simply for the federal court to do what we've been asking for since January of last year, which is vacate the permit and allow DPP to participate in that complex permitting process the same way that ASPRF was allowed to participate. Counsel, this is Judge Reshing. Sorry to interrupt you. Along with what you've been talking about, though, don't you currently have an appeal in front of the Board of Zoning Appeals about this permit? So why should we interject ourselves in the middle of the state zoning appeal process? Because the permitting process, Your Honor, is really where the process is. So the zoning appeal is highly deferential to the zoning administrator's decision during the permitting process. It would be our burden on appeal to show that the zoning administrator made a mistake. As a practical matter, the zoning hearing, you know, will last about half an hour or an hour. I get what you're saying that you don't think you're going to get much process out of the BZA appeal, but it seems like ripeness would require you to at least go through that step before you're then allowed to bring your claim to us so that we know as a final matter what the state's position is or what the city's position is, sorry, rather than stepping in in the middle to tell the city how to handle its own zoning appeals process. Yeah, although again, Your Honor, our argument is that we can't get a fair shake in any part of this process. The ZBA is governed by the same lawyers within the city who colluded with the lawyers for AFTRF to deliberately exclude BVP from the permitting process. I'd point the court to cases like Matthews v. Elridge 424 U.S. 319 that point out that due process has to be kind of a flexible thing. And so the notion that BVP would have to satisfy itself with a highly deferential to the zoning administrator brief ZBA hearing while another party, AFTRF, was essentially able to take BVP's property after a nearly year-long process of back and forth with the zoning administrator from which BVP was excluded simply doesn't serve due process. And the fact that BVP would have to wait for a ZBA hearing, a ZBA hearing, which I'll point out, Your Honor, has consistently been continued. And part of the roughened context there, Your Honor, is that BVP has brought other issues to the zoning board and they have consistently continued hearings and denied BVP a hearing. And we'd be happy to submit supplemental transcripts and briefings that show that BVP has not been able to get a hearing through ZBA. Counsel, sorry, this is Judge Rushing. I guess my point is just you speculate that you won't get a fair shake and that might be true, but it seems like we don't have that in front of us until there's actually a decision from the BZA that it's not ripe until we see what they do. And you don't have to, you know, it's not as though you lose any rights. You still have all of your assert those rights in federal court after you've been through the process and received a final decision from the city. Well, my response to that, Your Honor, would be to speculate. It's not speculation. I mean, BVP has already been denied its fair shake because that permitting process is 90 percent of the process. And so win, lose, or draw with the ZBA, you know, we've been damaged in the form of losing any kind of resolution on this issue for nearly a year and a half now and being denied the same process that any other party would get. And those damages exist whether we get a ZBA hearing or not simply because, you know, we've been cut out of our ability to use, for example, the money that we would have made from the transaction over the I point out, Your Honor, that, you know, BVP has consistently attempted to get ZBA hearings over the course of the past year and without really ever giving any reason other than vaguely speculating that this process might somehow affect the hearing. The city hasn't given BVP a ZBA hearing on anything, including on completely unrelated matters. Excuse me, this is Judge Thacker. Judge Rushing, did that answer your question? All right. Unless Judge Quattlebaum or Judge Rushing has further questions, Mr. Turpeney, I know you can't see your clock, but you're over time now and you have some time in rebuttal. Thank you, Your Honor. All right. Mr. Power. Good morning, Your Honors. May it please the Court. I am Thomas B. Powers III from Charlotte, North Carolina, on behalf of the City of Charlotte, Defendant Appellee in this case. The City contends that this Court should focus on three main areas in regards to exercising its judicial review. The first is the cross-easement agreement between ASVRF, Ballantyne Village SP, LLC, and the plaintiff. The second is the unfettered choices exercised by ASVRF, who, again, is a non-party to this lawsuit. And then finally, we would like for you to focus on the ongoing and active litigation that involves ASVRF, Ballantyne Village Parking, as well as the City of Charlotte, and not one, but two state tribunals at this time. Because of this, then we are asking for you either to affirm the District Court's ruling to abstain based on Burford v. Sun Oil, or to consider the smithsonist case for a lack of standing, a lack of ripeness, or application of the Penality Rule as articulated by... Can you... Yes, Your Honor. Has the City made a final determination about the parking spaces? At this time, the City's position has been once BVP, as well as ASVRF, resolve the issue of the cross-easement agreement, then we can apply the ruling. The letter that was sent out that, again, initiated this lawsuit back in October, clearly states ASVRF is proceeding at its own risk, and that if a higher tribunal, whether it's the Arbiter, the state local court, or the Court of Appeals, or even the North Carolina Supreme Court, were to agree with Ballantyne Village Parking, then the City would immediately revoke the permit. As counsel for BVP has indicated repeatedly, again, this collusion that has been alleged is a letter that was sent to ASVRF, where ASVRF agreed to language that clearly states that they are proceeding at their own risk in regards to anything related to the renovation project. As such, if they were to actually redo the theater space into a new office area, and the trial judge here in the state of courts were to agree with BVP, the City would then have an obligation to not only revoke the permit, but also make ASVRF restore the property back to where it was prior to the renovation. So, based on what's going on below, this is still sort of winding its way through the zoning appeal process. Is that correct? Prior to the initiation of this litigation, Ballantyne Village Parking did file a Zoning Board of Adjustment appeal. About five days prior to the actual hearing related to not only this matter, Ballantyne Village Parking then filed the federal lawsuit, and we stayed proceedings in regards to the Zoning Board of Adjustment process in its entirety. Again, as BVP has alluded to in their complaint, they're asking for the court to oversee and enforce the City's Zoning Board of Adjustment process and permitting process in that regard. So, because of this actual allegation that's been made in the complaint, we did not want to proceed because there was a concern from the City that if we proceeded with any Zoning Board of Adjustment hearing that involved Ballantyne Village Parking, that we could then be on the fowl of any subsequent decisions of the federal court related to this case or anything of that nature. So, nothing is final as of yet in that zoning, local zoning appeal process. Is that right? We have not had an opportunity to actually review and or litigate the first appeal. Again, Mr. Turpeney has alluded to a second appeal. Again, the City has actually requested from the case which may have an effect on the District Court's ability to oversee the City's Zoning Board of Adjustment process. Furthermore, to your question at hand, ASVRF as a non-party does have due process rights where they can request continuances or postponements of the Zoning Board of Adjustment process. So, as BVP continues to allude that the City is trying to foreclose their ability to proceed, they are also conveniently omitting that ASVRF has the same ability to request continuances and postponements as well in this regard. And the Zoning Board of Adjustment, who is implementing a quasi-judicial process where they're sitting in a similar court setting, hearing evidence, listening to witnesses, receiving sworn testimony and other evidence, is making that decision. Yes, Your Honor. Opposing counsel indicated that the arbitration award is unclear or inconclusive, something along those lines. What is your view of the arbitration award and how it may impact what's going on here? By here, I mean in federal court. Yes, Your Honor. From the City's perspective, we believe that, again, the arbitration award is something for the parties to actually resolve. The indication from Ballantyne Village Parking to this court in this representation is that even they dispute the actual contents and findings of their arbitration. As I alluded to in the notice to the court, which summarized not only the federal filing for a confirmation arbitration award by Ballantyne Village Parking, as well as the state proceeding by ASVRF, there is an inherent tension between both parties as to the contents and finality of the arbitration award. As such, the City is not taking a position one way or the other that Ballantyne Village Parking is correct or Ballantyne Village Parking is incorrect. Similarly, we are not for or against ASVRF. If ASVRF is found to be incorrect, we would then immediately, again, revoke the permit. But the onus is on those two parties. Yes, Your Honor. Thank you, counsel. So, I'm trying to make sure I understand the process. And I realize this may be in the future and that may affect the rightness doctrine. But in terms of what is to happen, at least with the permitting process, at some point will the City be presented with the results of the permitting process and make the permit permanent as opposed to conditional? Is that something that is an event that will happen in the future? We would actually say in this instance that the easement claims process between Ballantyne Village Parking and ASVRF needs to be undisputed and unambiguous in that regard. If you're asking the City of Charlotte to interpret the easement claims process that these two individuals contractually obligated themselves to, then we're stepping outside of our role into a judicial context that the City is not actually privy to or should be involved in. Sure. But what you do, I'm sorry, I appreciate that, but what do you do because you got a permitting application before you and you either have to say at some point, I'm asking this, I'm not telling you you know it better than me, at some point you have to say whether we're going to issue the permit without strings or without conditions or not, I would think. So doesn't the City, by virtue of its permitting process, at some point have to make a determination about whether ASVRF has you know sufficient rights to the parking spaces? We would not make that determination. Theoretically, under this hypothetical scenario, it would be another ombudsman decision or arbitration that the parties would need to undertake because again it is based on that contractual obligation that started this process. The City is not making a determination that ASVRF has the parking spaces or has taken the parking spaces from BVP. BVP continues to mischaracterize the actual nature of the situation because it was ASVRF who actually invoked the cross-easement agreements, easement claims process to allocate parking for its needs. It then brought that a contractual process that they undertook that said that they were contractually obligated to receive these parking spaces. So again, in this instance, the City only became involved once the ombudsman decision was undertaken. As BVP alludes to, there was a long time between when the initial request came in from ASVRF before the permit was issued. What BVP conveniently omits in this regard is that we did not issue a permit to ASVRF until ASVRF received a third party ombudsman decision. Once they received that and then brought it to the City, that was the information that showed they had a contractual ability at that time to actually receive the parking. Otherwise, you have the situation that BVP continues to allude to as to whether BVP does or does not have to provide parking and then whether or not ASVRF does or does not have access to said parking. The City of Charlotte is not trying to get into a he said, he said type of situation as to contractual claims, because that inherently is a matter that is for the courts, whether it's for the state court or for the federal court to resolve. Furthermore, I think in this instance, one of the aspects that BVP continually has avoided to utilize in the situation has been their right under their own cross-easement agreement to seek an injunction against ASVRF in regards to the issuance of the zoning permit. Under their easement agreement under Section 8 of that actual document, it states that BVP can't seek an injunction from a court, whether a state or federal, in regards to anything that may affect their rights during the pendency of the ombudsman or arbitration proceeding. At no time, even after the issuance of the zoning permit to ASVRF, have they actually exercised any of their rights under the cross-easement agreement to nullify or restrict the ability of ASVRF to utilize the agreement. That remedy alone would actually nullify the need for this case to proceed. But importantly, BVP has been sought to come to the city and sue the city in regards to a permitting process where they had contractual obligation, contractual rights that they never sought to utilize in this instance. That goes back again to the first point that I alluded to, which is the cross-easement agreement is where all of this originates from. The city only became a peripheral player in this regard because ASVRF and BVP engaged in this contractual agreement and those contractual rights that were provided to ASVRF from BVP is really the heart of the matter in regards to the contingents that BVP is bringing forth against the City of Charlotte. Without that cross-easement agreement, the City of Charlotte would not be involved in the situation simply because you would not have an arbitration process or an ombudsman in that regard. With that also, I will kind of pivot to a second point, which is again the unfettered choices that ASVRF currently has in this regard. ASVRF as a non-party is not going to be bound by this actual decision. And worse, the City of Charlotte could be in a precarious situation where BVP were to receive the assistance it is requesting, such as the revocation of the building permit. The City of Charlotte could then be in a subsequent matter where we could be litigating whether or not the building permit should or should not have been legally issued to them. Now, we believe that without a doubt that ASVRF understands and acknowledges that they're proceeding at their own risk and do not have a vested interest in this regard. But the problem comes into if ASVRF were to litigate this matter with the City of Charlotte, BVP then gets the best of both worlds. They get to then get a revocation while they're still suing and litigating BVP through the embusment, but they then put the City in the precarious situation of having to litigate the same matter in separate litigation in regards to the issuance. What the City has unequivocally stated in this regard has been that the issuance of the zoning permit is conditional on a final award allowing ASVRF to have the actual parking spaces on the property. I think there's a multitude of issues to the questions that were raised earlier as to the finality of the situation and whether this matter is right, and that is because the ever-changing factual circumstances of this case does not really give the City a clear definitive answer as to who is right, who is wrong, and whether or not the permit is or is not valid at this time. The issuance of that permit back at that time was only conditioned upon a final determination. ASVRF is only proceeding at its own risk, which was alluded to repeatedly not only in testimony of the City, but also in the letter itself. If I do not hear any further questions from your honors at this time, then I will rest on the briefs and supplemental briefs that the City of Charlotte has presented at this time. All right, thank you for your argument. Thank you. Thank you. Mr. Terpening, you have some time in rebuttal. Thank you. Four minutes. I appreciate that. I can, you know, obviously an issue that the is that the correct way to deal with that, since there's really no record on rightness, because the district court dismissed under Burford before it could look at that issue, and because that issue wasn't raised with the district court, is that this court should determine that the district court should not exercise abstention under Burford and should to Judge Mullen so that he can allow the parties to create a proper record on rightness and make a finding there. Mr. Powers. Counsel, can I interrupt you? This is Judge Quattlebaum. Don't we, isn't the issue about how we deal with rightness jurisdictional? And if we, hypothetically, if we don't have jurisdiction, how could we make a determination that the district court improperly applied the Burford doctrine? Well, again, Your Honor, respectfully, I don't think you have enough in the record to determine the rightness issue. Well, I get that. I understand your position there, but you suggested that we make a determination that the judge was wrong in applying Burford, and if we don't have jurisdiction, you know, whether we decide that now or whether we remand it, how could we make a determination on whether the abstention decision was right or wrong? Well, then my suggested approach, Judge, would be to remand it for the Judge Mullen to make a decision on rightness and then get to Burford again. But that is a matter of judicial efficiency, particularly given that this case has been pending for a year and a half. It would make sense to remand with some instructions for Judge Mullen on the Burford issue should he decide that this can proceed in the district court. Because one of the issues, and this ties into a number of the points that Mr. Powers made and that the court has made during this argument, one of the issues is that the delay itself is part of the injury of DVP at this point. And so, for example, we've got the permit letter that suggests that ASDRF proceeds at its own risk if it does the conversion. But if ASDRF loses in the future for some reason and has to kind of unwind the conversion, that doesn't do anything to help DVP with its damages. In other words, just because ASDRF suffers some negative consequence, that doesn't mean that DVP doesn't also suffer some other even larger negative consequence. And so our request and our suggestion is that it would be on a proper record that this court doesn't have. And then in an effort to avoid kind of ping-ponging back and forth between the Western District and the Fourth Circuit, perhaps provide some guidance on the Burford issue as well so that we can proceed when Judge Mullen decides on a proper record that the case is right. The only other point that I'd like to make that addresses something that Mr. Powers indicated and that the court's expressed before is that, you know, there's this notion that somehow because we got a DVA hearing, that that's going to kind of make up for the process problem at the permitting stage. And I'd underscore and ask the court to take a look again at all of the evidence in our record suggesting that the city's process was utterly corrupt and that the lawyers for ASDRF approached the city, asked for DVP to be excluded from that permitting process, even though DVP was the party that stood to lose the most. And that the city, for whatever reason, then went ahead and excluded DVP from that process such that DVP couldn't present information. And the reason that that matters is that because of the deferential standards at the DVA hearing to the permitting process, because DVP didn't get a fair step in the permitting process, and because it didn't get to complete its record there, it can never get a fair DVA hearing because it didn't get its voice in that process. It didn't get the information in that it was supposed to get in. And so the only way to fix this, we can't just sort of sit back and say we'll deal with it at the highly deferential to the city's DVA hearing. We have to say we've got to start that permitting process again after vacating the permit, let the permitting process happen, and then have the DVA hearing. There's no reason why the city wouldn't want that except if indeed the process... Counsel, this is Judge Thacker. I know you can't see your timer, but you're over time now. So if you'd like to wrap up, please. Simply to say we appreciate the Court's time. We think our briefing has addressed these issues, and we're grateful to the Court for looking at this issue. Thank you. All right. Thank you. And on behalf of the panel, we are also grateful to each of you for your arguments. Although we can't adhere to our ordinary custom and come down and greet you, we nonetheless greet you from afar and send you our best wishes for a safe and healthy day. Thank you. We'll be in recess now until the next argument.
judges: Stephanie D. Thacker, A. Marvin Quattlebaum Jr., Allison J. Rushing